TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
GREGORY W. STAPLES (Cal. Bar No. 155505)
KEVIN Y. FU (Cal. Bar No. 319465)
Assistant United States Attorneys
Orange County Office
    Ronald Reagan Federal Bldg & U.S. Courthouse
    411 West 4th Street, Suite 8000
    Santa Ana, California 92701
    Telephone:  (213) 308-7602
    Facsimile:  (714) 338-3561
    E-mail:    Kevin.Fu@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

06/10/2026

CENTRAL DISTRICT OF CALIFORNIA
BY:     JD     DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>MAHENDER MAKHIJANI,<br><br>          Defendant. | No. 8:26-mj-387-DUTY<br><br>GOVERNMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS REQUEST FOR DETENTION |

    Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Kevin Y. Fu and Gregory W. Staples, hereby submits the government's memorandum of points and authorities in support of its request for detention of defendant Mahender Makhijani.

    This document is based upon the below memorandum of points and

//

//

authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 10, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney

JENNIFER L. WAIER
Chief Assistant United States
Attorney &
Acting Chief, Criminal Division


_____/s/_____
KEVIN Y. FU
GREGORY W. STAPLES
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

The government respectfully requests that defendant Mahender Makhijani ("defendant") be detained pending trial.  Defendant is a serial fraudster responsible for massive losses.  In the present case, he has defrauded a bank to the tune of $100 million.  In May 2026, an arbitrator awarded approximately $1.34 billion to defendant's former business associate stemming from legal proceedings against defendant and his affiliated entities.  In another lawsuit against defendant and others, the jury awarded millions of dollars to the plaintiff, including punitive damages.  Additional lawsuits alleging fraud against defendant and his entities are pending, including a lawsuit brought by a different bank that seeks to recover over $60 million based on claims like the conduct for which defendant has been criminally charged.

Defendant's conduct has shown that pretrial services would not be able to monitor him -- and he certainly cannot be trusted to voluntarily abide by any conditions of release.  Defendant has engaged in deliberate and sophisticated efforts to conceal his activities and avoid oversight, acting through shell companies and straw managers, and moving money and assets through those entities and people in obscure ways.  He has told a cooperator, Individual #1, that his name is not on anything, that he is not even a U.S. citizen, and that he would flee if necessary.  He is an Indian citizen with a home and other resources in India.  He also has a history of threatening and intimidating others -- and acting on those threats.

If defendant does not comply with conditions, he may continue inflicting harm via his fraud schemes.  Further, defendant's past

conduct indicates that he is likely to threaten or intimidate at least one potential witness, Individual #1.  Finally, if defendant were to flee to India, he would not be held accountable for his actions, thus foreclosing the ability of his fraud victims to recover restitution and leaving them with massive losses.

Because no condition or combination of conditions will reasonably assure defendant's future appearance or the safety of the community, the government requests detention.

## II.    STATEMENT OF FACTS

Defendant is charged with bank fraud, in violation of 18 U.S.C. §§ 1344(1) and 2(b).  (Dkt. 1 ("Complaint") at ¶ 3.)

Defendant controls several corporate entities, including Cantor Group V LLC ("Cantor V") and Continuum Analytics LLC ("Continuum"). (See id. at ¶¶ 24-32.)  Beginning around 2017, Cantor V entered into a lending agreement with Bank #1.  (Id. at ¶¶ 5, 33(a).)  Under the agreement, Cantor V was to acquire loans secured by real property with the money that Bank #1 advanced and then pledge those loans to Bank #1 as collateral.  (Id. at ¶¶ 5, 15-16.)  Crucially, Cantor V promised to be in the first lien position on the real property securing that collateral.  (Id. at ¶¶ 6-7, 17-18.)  However, defendant, acting through Cantor V, deceived Bank #1 as to the value of the collateral pledged.

From September 2024 to April 2025, defendant altered and caused his employee, Individual #1, to alter title insurance policies to submit to Bank #1.  (See id. at ¶¶ 8-9, 19-22, 66-70).  These falsified policies listed Cantor V in the requisite first lien position when, in reality, other creditors were in the first lien position.  (Id.)  "[A] bank executive from Bank #1 stated that if he

2

had known the true lien positions of the collateral that Cantor V had pledged, Bank #1 would have considered Cantor V to be in default and demanded immediate, full repayment, which would have required Cantor V to repay Bank #1 nearly $100 million."  (Id. at ¶ 11.)

**III. ARGUMENT IN SUPPORT OF DETENTION**

The government is entitled to a detention hearing because this case involves a serious risk that defendant will flee if released, 18 U.S.C. § 3142(f)(2)(A), as well as a serious risk that defendant will threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness, 18 U.S.C. § 3142(f)(2)(B).  The Court should detain defendant because this case lacks any release condition or combination of release conditions that would reasonably assure (1) defendant's appearance as required and (2) the safety of the community.  18 U.S.C. § 3142(e)(1).

1.    Defendant poses a major risk of flight.

Defendants who are charged with crimes that are "not readily susceptible to effective monitoring" pose an "unacceptably high risk" of noncompliance with release conditions.  See United States v. Hir, 517 F.3d 1081, 1093 (9th Cir. 2008).  Similarly, "sophisticated criminal conduct" weighs heavily toward risk of flight.  United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990).

In this case, defendant is clearly "not readily susceptible to effective monitoring" and therefore poses an "unacceptably high risk" of noncompliance.  Hir, 517 F.3d at 1093.  Defendant deliberately engaged in sophisticated conduct to obfuscate the movement of his funds and his asset ownership.  (See id. at ¶¶ 16, 24-32, 78-80.) The graphic below is an example of the movement of funds through defendant's companies, accounts, and the accounts of an associate:

3

| Date: | Amount: | From: | To: |
|---|---|---|---|
| 1/4/2024 | $5,685,000 | Bank #6 - Commercial Loan | Cantor Group IV - Bank #6 account ending in 0834 |
| 1/4/2024 | $5,685,000 | Cantor Group IV - Bank #6 account ending in 0834 | Cantor Group IV - Bank #5 account ending in 4264 |
| 1/4/2024 | $5,685,000 | Cantor Group IV - Bank #5 account ending in 4264 | Cantor Group V - Bank #5 account ending in 7580 |
| 1/4/2024 | $5,685,000 | Cantor Group V - Bank #5 account ending in 7580 | Alessandro Group - Bank #5 account ending in 5824 |
| 1/4/2024 | $5,685,000 | Alessandro Group - Bank #5 account ending in 5824 | Continuum Analytics - Bank #5 account ending in 4074 |
| 1/4/2024 | $2,000,000 | Continuum Analytics - Bank #5 account ending in 4074 | Makhijani & Individual #2 - Bank #5 account ending in 5743 |
| 1/4/2024 | $2,000,000 | Makhijani & Individual #2 - Bank #5 account ending in 5743 | Individual #2 - Bank #5 account ending in 6252 |
| 1/5/2024 | $2,500,000 | Continuum Analytics - Bank #5 account ending in 4074 | Makhijani & Individual #2 - Bank #5 account ending in 5743 |
| 1/5/2024 | $500,000 | Continuum Analytics - Bank #5 account ending in 4074 | Makhijani & Individual #2 - Bank #5 account ending in 5743 |
| 1/5/2024 | $2,500,000 | Makhijani & Individual #2 - Bank #5 account ending in 5743 | Individual #2 - Bank #5 account ending in 6252 |
| 1/5/2024 | $500,000 | Makhijani & Individual #2 - Bank #5 account ending in 5743 | Individual #2 - Bank #5 account ending in 6252 |
| 1/5/2024 | $3,000,000 | Individual #2 - Bank #5 account ending in 6252 | Individual #2 - Bank #1 account ending in 1376 |
| 1/16/2024 | $400,000 | Individual #2 - Bank #1 account ending in 1376 | Makhijani & Individual #2 - Bank #5 account ending in 5743 |
| 1/16/2024 | $400,000 | Makhijani & Individual #2 - Bank #5 account ending in 5743 | Continuum Analytics - Bank #5 account ending in 4074 |
| 1/22/2024 | $1,000,000 | Individual #2 - Bank #1 account ending in 1376 | Makhijani & Individual #2 - Bank #5 account ending in 5743 |
| 1/22/2024 | $954,000 | Makhijani & Individual #2 - Bank #5 account ending in 5743 | Continuum Analytics - Bank #5 account ending in 4074 |

(See id. at ¶ 79.)  Defendant has also insulated himself from his businesses' activities by placing others in nominal leadership roles at his companies and using them as signatories.  (See id. at ¶¶ 13, 16, 24-32, 33(b), 53-55.)  Even his own home is listed under one of

4

his many companies' names. (Id. at ¶¶ 60, 77.) He cannot be trusted to comply with release conditions.

Additionally, "[c]onsideration of the nature of the offenses charged involves consideration of the penalties." Townsend, 897 F.2d at 995. The penalties defendant faces cut towards risk of flight. If convicted, defendant faces paying nearly $100 million in restitution to Bank #1, up to $1 million in fines, and up to 30 years in prison. 18 U.S.C. § 1344. The sheer magnitude of defendant's fraud suggests that his sentence will be severe, as the guidelines range is 108-135 months for $100 million in losses, even without applying additional enhancements and even assuming defendant is in criminal history category I. U.S.S.G. §§ 2B1.1(a)(1), (b)(1)(M); 5 (sentencing table).

Moreover, additional factors the Court can consider are defendant's financial resources, alienage, community ties, and past conduct. 18 U.S.C. § 3142(g)(3)(A); see, e.g., United States v. Santos-Flores, 794 F.3d 1088, 1090 (9th Cir. 2015); Townsend, 897 F.2d at 996.

Financial resources both provide the opportunity to flee and weaken the assurance of appearance that a condition of bail may otherwise provide. See, e.g., Townsend, 897 F.2d at 996. The government has reason to believe that defendant possesses significant financial resources and assets given, among other things, his use of adjacent multi-million-dollar homes and luxury vehicles. (See id. at ¶ 83.) However, much of defendant's resources remain unaccounted for, as the government has not yet been able to fully trace defendant's resources, which are almost certainly not in his name. (See id.)

5

Though alienage is not dispositive, Santos-Flores, 794 F.3d at 1090, alienage combined with frequent travel to foreign countries cuts against assurance of a defendant's presence at trial. See Townsend, 897 F.2d at 996. Defendant is a citizen of India, has family in India, travels to India, owns a home there, and has bank accounts there. (Id. at ¶¶ 13, 50(f), 81.) Defendant could flee to India with ease and, crucially, has told a cooperator that he would flee if necessary. (Id. at ¶¶ 13, 75.) Although the government anticipates that defendant will point to the fact that he informed the government of his travel to and from the United States after the execution of the search warrants in September 2025, the key point here is that the government also informed his counsel that it had paused review of the search warrant materials pending litigation over their privilege concerns. However, with the complaint and arrest, defendant now knows of other investigative steps the government has taken, the government's evidence, and the existence of witnesses, including a cooperator. Defendant now has greater reason than before to flee, as he told the cooperator he would.

2. Defendant's release would pose a physical danger to others and economic danger to the community.

Defendant's history of alleged threats, intimidation, and harassment suggests that no conditions reasonably assure the safety of the community without defendant's detention. Defendant's past threats and intimidation are especially pertinent here, given that they were directed at former business associates. Individual #1, defendant's former employee and a government cooperator, has expressly stated that he is afraid of defendant and that defendant has threatened to kill Individual #1, bankrupt Individual #1, and

6

ruin Individual #1's reputation. (Complaint at ¶ 74(a)-(b), (e).) Defendant also blackmailed Individual #1. (Id. at ¶ 74(e).)

In the past, defendant's threats of intimidation and harassment came to fruition -- in a dispute with a businessman, for example, defendant allegedly ordered billboards accusing the businessman of corruption to be driven around the community, posted eviction notices on the homes of the businessman's family members, and directed personnel to forcibly break into the businessman's office building to take equipment. (See id. at ¶¶ 38-49.)

Finally, danger may encompass pecuniary or economic harm. United States v. Reynolds, 956 F.2d 192, 192 (9th Cir. 1992). As discussed, the potential losses resulting from defendant's alleged fraud in this case total nearly $100 million. (Complaint at ¶¶ 11, 33(f).) The aforementioned businessman has been awarded $1.34 billion resulting from arbitration against defendant and others, and another bank has brought a civil lawsuit seeking $60 million for conduct similar to that for which defendant has been charged. (Id. at ¶¶ 84, 87.) Given defendant's propensity to obfuscate his activities, including using different phones to engage in what the government cooperator described as "shady" dealings, (id. at ¶¶ 13, 74(f)), defendant's economic harm cannot feasibly be mitigated by, for example, monitoring conditions. See Hir, 517 F.3d at 1093.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court order that Defendant be detained pending trial.

7